# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

April 18, 1997

Cecil W. Crowson
Appellate Court Clerk

MELVIN ARTHUR MAHLER,    )
    )
    Plaintiff/Appellant,    )
    )    Williamson Chancery
    )    No. 22189
VS.    )
    )    Appeal No.
    )    01A01-9507-CH-00303
AUBREY CHASTAIN MAHLER,    )
    )
    Defendant/Appellee.    )

APPEAL FROM THE CHANCERY COURT FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

For the Plaintiff/Appellant:

A. Russell Willis
WILLIS & KNIGHT
Nashville, Tennessee

For the Defendant/Appellee:

Mary Frances Lyle
BRUCE, WEATHERS, CORLEY,
    DUGHMAN & LYLE
Nashville, Tennessee

## MODIFIED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the divorce of parties who have been married twice. Seven months after their second marriage, the husband filed a divorce petition in the Chancery Court for Williamson County. The wife counterclaimed for divorce. The trial court heard the proof without a jury and on April 19, 1995 entered a decree declaring the parties divorced and awarding the wife $40,000. Both parties have appealed. The husband takes issue with the $40,000 award to the wife, while the wife takes issue with the division of the marital property and the trial court's failure to award her rehabilitative alimony. While we concur with the trial court's denial of the wife's request for spousal support, we have determined that the division of the marital property must be modified.

## I.

Melvin A. Mahler and Aubrey Chastain Mahler were married for the first time on September 21, 1990. Mr. Mahler, the owner of an electronic security business, was fifty-three years old and was recently divorced. Ms. Mahler was an experienced interior designer. She was forty years old and had also been married before. This marriage lasted less than two years. Mr. Mahler filed for divorce on August 28, 1992, and the parties signed a marital dissolution agreement on September 30, 1992 in which Ms. Mahler agreed to accept $100,000 in complete settlement of her claims for spousal support and an equitable division of the marital property. A final divorce decree was entered on November 4, 1992.

The Mahlers reconciled shortly after the divorce and were married for the second time on December 30, 1992. Mr. Mahler moved into Ms. Mahler's house on Wilson Pike, and Ms. Mahler agreed to renovate portions of her house to accommodate Mr. Mahler. The marriage foundered within months. Ms. Mahler decided to sell her house and demanded that Mr. Mahler reimburse her for the renovations she had made at his request. Mr. Mahler paid Ms. Mahler $27,000 but considered it a loan rather than reimbursement. Ms. Mahler also began a campaign to undermine Mr. Mahler's business by making extremely derogatory comments to Mr. Mahler's business associates, his customers, and the Internal Revenue Service. Mr. Mahler finally moved out of Ms. Mahler's house on June 22, 1993 after she refused to move into his house on Stuart Lane.

Mr. Mahler filed for divorce in the Chancery Court for Williamson County on July 30, 1993. Ms. Mahler counterclaimed for divorce on August 20, 1993, and ten days later moved to set aside the first divorce decree on the ground that Mr. Mahler had misrepresented the decline in his net worth during their first marriage. The trial court directed Mr. Mahler to begin paying Ms. Mahler $1,250 in monthly spousal support on December 6, 1993, and one day later denied Ms. Mahler's motion to set aside the original divorce decree.[1]

A protracted litigation period punctuated by several discovery disputes followed. Ms. Mahler sold her Wilson Pike house for $269,000, and Mr. Mahler tried unsuccessfully to convince the court to end Ms. Mahler's temporary spousal support. The trial court heard three days of proof in February 1995 and filed its memorandum opinion on March 1, 1995. The trial court declared the parties divorced and, noting that the marriage was of short duration, ordered Mr. Mahler to pay Ms. Mahler $40,000 and to hold her harmless for certain joint debts and for any back taxes, penalties, and interest during the years they filed joint returns. The trial court also denied Ms. Mahler's request for rehabilitative alimony.

## II.

We turn first to the distribution of the marital property of this brief marriage during which the parties actually lived together as husband and wife for less than seven months.[2] The trial court did not specifically undertake to distribute the marital estate but did award Ms. Mahler $40,000 to offset the decrease in her net worth during the marriage. The basis for this award is not altogether apparent; however, because of the trial court's invocation of the "marriage of short duration principle," we construe it as an attempt to divide the marital property rather than as an award for spousal support or for legal expenses.

## A.

---

[1]This court later affirmed the denial of Ms. Mahler's motion to set aside the original divorce decree. *Mahler v. Mahler,* App. No. 01A01-9404-CH-00169, 1994 WL 475865 (Tenn. Ct. App. Sept. 2, 1994), *perm. app. denied* (Tenn. Nov. 12, 1994).

[2]Despite Ms. Mahler's efforts to revisit issues involved in the first divorce, this appeal concerns only the parties' second marriage. The court will concern itself only with the present marriage rather than the former marriage when the parties have been married more than once. *Flanagan v. Flanagan*, 656 S.W.2d 1, 3 (Tenn. Ct. App. 1983).

Both parties focused on the changes in the net worth during the marriage, apparently believing that these changes would enable the trial court to identify and distribute the marital property. Ms. Mahler asserted that her net worth had declined by $86,500 during the marriage, while Mr. Mahler's net worth had increased by $910,000. She argued that the increase in Mr. Mahler's net worth should be treated as marital property because she contributed significantly to its preservation and acquisition.

Not surprisingly, Mr. Mahler disagreed with Ms. Mahler's valuation methodology[3] and with her claims that she had contributed substantially to the appreciation of his separate property. He asserted that his net worth had actually declined during the marriage and that the changes in his net worth reflected the proceeds from the sale of separate property, the reinvestment of other separate pre-marital property, and new loans for which he alone was responsible. Mr. Mahler vigorously denied that Ms. Mahler had contributed in any way to the appreciation of any of his property and stated that Ms. Mahler had been systematically undermining his financial position since March 1993.

The trial court did not attempt to identify, value, or distribute the marital estate. Instead, it found that Ms. Mahler had not made "any substantial monetary or non-monetary contribution to the increase in Husband's net worth." While the trial court made no specific findings concerning the change in Ms. Mahler's net worth during the marriage, it found that her bank account had been depleted "by the expense of this litigation and her unsuccessful effort to have the November 4, 1992 divorce decree rescinded." After reciting that Ms. Mahler had received $18,750 in alimony pendente lite as well as $27,000, the trial court, applying what it termed "the marriage of short duration principle," awarded Ms. Mahler $40,000[4]

---

[3]Ms. Mahler based her calculations of Mr. Mahler's net worth on the May 1992 financial statement he had provided her during the negotiation of the marital dissolution agreement in their first divorce. On the other hand, Mr. Mahler based his calculations on a December 1992 financial statement. The trial court questioned the relevance of the May 1992 financial statement but admitted it anyway. The record provides no basis for determining which financial statement the trial court relied upon.

[4]The trial court indicated that $40,000 represented the "estimated reasonable costs of litigation." The proof indicated that Ms. Mahler's legal expenses for her unsuccessful attempt to set aside the first divorce decree were $5,572.50 and that her legal expenses for the second divorce litigation were $33,335.72.

to restore her "as nearly as possible to the financial condition she would have been in had the marriage never taken place."[5]

**B.**

Tennessee's divorce statutes recognize three species of marital property. The first includes "all real and personal property . . . acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce." Tenn. Code Ann. § 36-4-121(b)(1)(A) (1996). The second includes the income from and any increase in the value of a spouse's separate property "if each party substantially contributed to its [the separate property's] preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B). The third includes the value of vested pension, retirement or other fringe benefit rights accrued by either spouse during the course of the marriage. Tenn. Code Ann. § 36-4-121(b)(1)(B).[6]

In recent years, much of the litigation involving the distribution of marital property has focused on the increase in the value of a spouse's separate property during the marriage. The Tennessee Supreme Court has provided clear direction that the phrase "any increase in value" in Tenn. Code Ann. § 36-4-121(b)(1)(B) should be construed broadly. *Ellis v. Ellis*, 748 S.W.2d 424, 426-27 (Tenn. 1988). It has also stated with equal clarity that an increase in value of separate property will not be considered marital property unless (1) it occurred during the marriage and (2) the non-owner spouse made some substantial contribution to the preservation and appreciation of the separate property. *Cohen v. Cohen,* 937 S.W.2d at 833; *Harrison v. Harrison,* 912 S.W.2d 124, 127 (Tenn. 1995).

Determining whether a spouse has contributed substantially to the preservation and appreciation of the other spouse's separate property is a question

---

[5]Taken together, the $40,000 award, the alimony pendente lite Ms. Mahler received, and the money she received from Mr. Mahler to improve her house equals $85,750, an amount roughly equal to the decrease in Ms. Mahler's net worth during the marriage.

[6]The courts treat an increase in value of a spouse's pension or similar benefits differently than they do an increase in value of other types of separate property. They will consider increases in the value of pensions and similar benefits as marital property without a showing of substantial contribution by the non-employee spouse. *Cohen v. Cohen,* 937 S.W.2d 823, 830 (Tenn. 1996).

of fact. *Brown v. Brown,* 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). While the claimed contributions must be real and significant, they need not relate directly to a particular piece of separate property, Tenn. Code Ann. § 36-4-121(b)(1)(C), and they need not be monetarily commensurate with the appreciation in the separate property's value. *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989). The entire amount of the appreciation in separate property will be treated as marital property when the non-owner spouse proves that he or she has contributed substantially to the appreciation or preservation of the other spouse's separate property. *Harrison v. Harrison,* 912 S.W.2d at 127.

Non-monetary contributions are not as significant in marriages of short duration, and thus a spouse's claims to the other spouse's separate property are less tenable. *Batson v. Batson,* 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Thus, this court stated approximately ten years ago that one equitable way to divide the marital estate of a marriage of short duration was "to divide the [marital] property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson v. Batson,* 769 S.W.2d at 859. This approach necessarily presupposes that there is a marital estate and that the trial court has undertaken to identify and value the marital property in a systematic way.

## C.

The trial court's classification of the marital property appears to contain three material errors. First, it overlooks that the $73,267 appreciation in the value of Mr. Mahler's individual retirement accounts was marital property even without substantial contributions by Ms. Mahler. *See Cohen v. Cohen,* 937 S.W.2d at 830. Second, it overlooks Mr. Mahler's admission that he used marital funds to purchase the pontoon boat and other furnishings and, therefore, that these assets, valued at $20,000, were marital property. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A). Third, it overlooks the fact that the $29,280 increase in Mr. Mahler's bank accounts was marital property because it derived from his salary. *See Wilson v. Moore,* 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996).

In addition to these classification errors, the trial court placed undue emphasis on Ms. Mahler's litigation expenses because a portion of them were voluntarily incurred and were unrelated to this proceeding. Of the $38,908.22 claimed by Ms. Mahler, $5,572.50 relate to her unsuccessful efforts to set aside the parties' first divorce decree. The trial court also appears to have overlooked the $69,000 profit Ms. Mahler made when she sold her house. This profit was marital property because Mr. Mahler underwrote $27,000 worth of improvements to the house during the marriage. Since the profit was not reflected in Ms. Mahler's testimony concerning the decline in her net worth, the actual decline was $17,500, not $86,500.

The evidence does not preponderate against the trial court's finding that Ms. Mahler did not contribute substantially to the appreciation in the value of Mr. Mahler's separate property during this short-lived marriage. Thus, based on the proof, we find that the parties' marital estate consists of:

| | |
|---|---|
| Increase in Mr. Mahler's IRAs | $ 73,267 |
| Pontoon boat & furnishings | 20,000 |
| Increase in Mr. Mahler's bank accounts | 29,280 |
| Appreciation in Ms. Mahler's house | 69,000 |
| Total | $191,547 |

Since Mr. Mahler was the primary wage-earner during this short marriage, we have determined that it is equitable to award him $114,928 (60% of the marital estate) and to award Ms. Mahler $76,619 (40% of the marital estate). Ms. Mahler's share should consist of the $69,000 appreciation in the value of her house and an additional cash award of $7,619.[7]

## III.

The final issue concerns Ms. Mahler's alimony claims which properly fall into two categories. First, Ms. Mahler specifically asserts that the trial court should have awarded her some sort of rehabilitative alimony. Second, the trial

_____

[7]The trial court never specifically found that Mr. Mahler did not contribute substantially to the appreciation in the value of Ms. Mahler's Wilson Pike house. To the extent that the trial court's comments concerning the improvements in the real estate market are so construed, they are not supported by a preponderance of the evidence.

court appears to have been inclined to award her funds to defray her legal expenses for this litigation. These sorts of awards are commonly classified as alimony awards. *Smith v. Smith,* 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995); *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988).

We concur with the trial court's determination that Ms. Mahler was not entitled to rehabilitative alimony. The need for spousal support is diminished when the marriage is of short duration and when the spouse requesting spousal support has contributed little, directly or indirectly, to the marriage. *Crain v. Crain,* 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996); *Flanagan v. Flanagan,* 656 S.W.2d 1, 3-4 (Tenn. Ct. App. 1983). This marriage was extremely brief, and the evidence supports the trial court's finding that Ms. Mahler contributed little directly or indirectly during the seven months that the parties lived together as husband and wife. In addition, the record contains no proof that Ms. Mahler requires any additional rehabilitation to enable her to return to her prior interior design and home remodeling career.

We likewise find that Ms. Mahler is not entitled to receive an additional award to defray all or even part of her legal expenses. She is currently forty-eight years old and is in good health. She has a demonstrated ability to earn income in a lucrative profession. She has also received sufficient liquid assets which will enable her to pay her legal expenses. Without a finding by the trial court that Mr. Mahler's intransigence caused Ms. Mahler to incur more legal fees than usual, we are not prepared to require Mr. Mahler to pay any of Ms. Mahler's legal expenses under these facts.

**IV.**

The divorce decree, as modified herein, is affirmed, and the case is remanded to the trial court for whatever further proceedings are required. We tax the costs in equal proportions to Melvin Arthur Mahler and his surety and to Aubrey Chastain Mahler for which execution, if necessary, may issue.

_____

-8-

                                                          WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.


_____
SAMUEL L. LEWIS, JUDGE